UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| JUSTIN T. BECKMAN, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 3:06-CV-384 |
| | ) (GUYTON) |
| WILLIAM BIVENS, in his individual and his official capacity as Sheriff of Monroe County, Tennessee, and MONROE COUNTY, TENNESSEE, | ) ) ) ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 14] on the defendants' Motion for Summary Judgment. [Doc. 65] On May 18, 2009, the parties appeared before the Court for a hearing on the instant motion. After the hearing, the Court took the motion under advisement and it is now ripe for adjudication. For the reasons set forth more fully below, the defendant's motion [Doc. 65] will be **GRANTED in part** and **DENIED in part**.

### I. Relevant Facts

The plaintiffs in this case are all former employees of the Monroe County Sheriff's Department ("MCSD") under the administration of former Sheriff Doug Watson ("Watson"). On August 3, 2006, an election for the position of Monroe County Sheriff was held, with defendant Bill Bivens ("Bivens"), a Democrat, running against the Republican incumbent, Watson. Bivens won the election and took office as the Monroe County Sheriff on September 1, 2006.

Prior to taking office, Bivens announced that he would be accepting applications for positions in the MCSD, including applications from individuals then employed under the Watson administration. Bivens interviewed a number of applicants and then made his hiring decisions, retaining forty-four out of the sixty-eight department personnel employed by Watson, approximately 65%. Of the twenty-four who were not retained, nineteen of the former employees filed the instant action, alleging that Bivens and Monroe County, Tennessee retaliated against them for engaging in constitutionally protected activity, namely the support of Watson during his 2006 campaign for re-election. Since the filing of the action, six of the nineteen plaintiffs have either voluntarily withdrawn their claims or been dismissed for failure to prosecute [Docs. 2, 5, 61], leaving the thirteen plaintiffs whose claims are at issue in the instant motion.

## II. Standard of Review

### A. Summary Judgment

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. Celotex Corp. v. Catrett, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., 475 U.S. at 587. To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The genuine

2

issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. Id.

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Id. at 249. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

### B. First Amendment Retaliation

To establish a prima facie case of First Amendment retaliation pursuant to 42 U.S.C. § 1983, a plaintiff must establish three elements:

> (1) that he [or she] was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused him [or her] to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; (3) that the adverse action was motivated at least in part as a response to the exercise of his [or her] constitutional rights.

Gritton v. Disponett, No. 08-5013, 2009 U.S. App. LEXIS 11343, at *19 (6th Cir. May 27, 2009) (citing Vaughn v. Lawrenceburg Power Sys., 269 F.3d 702, 715 (6th Cir. 2001); Thaddeus-X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999)); see also Jenkins v. Rock Hill Local School District, 513

3

F.3d 580 (6th Cir. 2008) (establishing the same elements for a prima facie case).[1] The Sixth Circuit has further held that:

> The analysis of a defendant's motives in retaliation claims is well established: the plaintiff has the burden of establishing that his protected conduct was a motivating factor behind any harm, and then the burden of production shifts to the defendant, who must show that he would have taken the same action in the absence of the protected activity.

Gritton, 2009 U.S. App. LEXIS 11343, at * 20( citing Thaddeus-X, 175 F.3d at 399; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (discussing the burden shifting analysis that applies to summary judgment motions)).

Finally, the Court notes that the Sixth Circuit has held that:

> Summary judgment is not appropriate where genuine issues of material fact exist, Fed. R. Civ. P. 56, and Defendants' motivation in this case presents such a genuine issue. Viewing the facts in the light most favorable to Plaintiffs, as we must when reviewing disposition by summary judgment, we cannot definitively say that Defendants stopped and detained Plaintiffs without regard to their protected expression. **As we have previously observed, "claims involving proof of a defendant's intent seldom lend themselves to summary disposition."** Bloch, 156 F.3d at 682 (internal brackets and citations omitted); see also Barrett v. Harrington, 130 F.3d 246, 263 (6th Cir. 1997) (finding "inferences raised by the evidence of record . . . sufficient to create a question of fact and avoid summary judgment" where the record statements "reveal the possibility that . . . [the defendant] did have a retaliatory motive"); McCurdy, 240 F.3d at 520 (remanding a claim that an officer retaliated against plaintiff for his speech by executing an otherwise valid arrest for an inquiry into the officer's motivations); Cockrel v. Shelby County Sch. Dist., 270 F.3d

---

[1] The Court notes that the case cited by the parties in their briefs, Sowards v. Loudon County, 203 F.3d 426 (6th Cir. 2000) offers somewhat conflicting views as to the third element of the prima facie case, varying between requiring a showing that the adverse action was "motivated at least in part", "motivated in substantial part", or "a substantial or motivating factor." Id. at 431. Given that more recent Sixth Circuit case law consistently utilizes the "motivated at least in part" standard, that is the standard the Court utilizes herein.

4

1036, 1056-57 (6th Cir. 2001) ("[B]ecause plaintiff has established elements of her claim for First Amendment retaliation, summary judgment for defendants is proper only if the evidence is such that every reasonable juror would conclude that the defendants have met their burden.")

Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro, 477 F.3d 807, 823 (6th Cir. 2007) (emphasis added).

## III. Failure to Attend Depositions

Before addressing the claims of the individual plaintiffs, the Court notes that the defendants' motion indicates that a number of plaintiffs did not appear for depositions noticed by the defendants, including Jeb Brown, Michael Dion, Chuck Hunt, and Christopher Williams. Rule 37 of the Federal Rules of Civil Procedure specifically provides a framework for addressing such a failure. The defendants have not invoked Rule 37, but instead simply argue in their motion for summary judgment that the plaintiffs did not appear. Given the defendants' choice not to invoke the assistance of the Court by filing a motion pursuant to Rule 37, and given that there is no evidence before the Court that the depositions were properly noticed, that the plaintiffs received the notices, nor that defense counsel made good faith efforts to resolve the dispute, the Court will not, at this time, consider the fact that these plaintiffs did not appear for depositions. If the defendants wish to depose the plaintiffs at issue prior to trial, the defendants may seek relief within the scope of the Rules.

## IV. Individual Plaintiffs

### A. Plaintiffs Who Did Not Apply

Initially, the Court notes that during the May 15, 2009, hearing, plaintiffs' counsel conceded that plaintiffs Jeb Brown, Chuck Hunt, and George Williams did not apply for a position under the

5

Bivens administration. In the absence of such applications, these three plaintiffs cannot show that they suffered an adverse employment action, nor can they show that the decision not to hire them was motivated by protected activity. Rather, the undisputed facts show that these three plaintiffs did not submit applications, and thus were never under consideration for a position with the Bivens administration. Accordingly, given that these three plaintiffs cannot establish a prima facie claim of First Amendment retaliation, the defendants' motion for summary judgment **[Doc. 65]** will be **GRANTED** as to Jeb Brown, Chuck Hunt, and George Williams.

### B. Justin Beckman

There is no dispute that plaintiff Beckman supported Watson and assisted in Watson's re-election campaign, and thus did engage in constitutionally protected activity. Similarly, there is no dispute that Beckman applied for a position with the Bivens' administration, but was not selected, and thus Beckman's employment with the MCSD was terminated when Bivens took office, satisfying the second element of the prima facie case.

With respect to the third element, whether Beckman's support of Watson motivated, at least in part, Bivens' decision not to retain Beckman, Beckman asserts that while campaigning for Watson during early voting and on election day, he encountered Bivens and had a brief conversation with him. [Doc. 82-3 at 15] Beckman says that on these occasions, he was wearing a "Watson shirt" and handing out Watson brochures. [Id.] In contrast, Bivens asserts that he did not know Beckman prior to this litigation, and that he chose not to hire Beckman based on the advice of Bivens' Chief Jailer, Trent Prock, who told Bivens that Beckman had trouble working with superiors. [Doc. 66-14 at 45-46] Drawing all reasonable inferences in favor of the plaintiffs, the Court finds that there is a question of fact as to whether Bivens recognized Beckman and later retaliated against Beckman for

6

supporting Watson. In the end, the resolution of Beckman's claim requires a credibility determination, a choice as to whether to believe Bivens' statement that his actions were not motivated by Beckman's political activity, and it is the jury, not the Court, who must make such a determination. Accordingly, the Court finds that the defendant's motion **[Doc. 65]** will be **DENIED** as to Beckman.

### C. Barbara Collake

There is no dispute that plaintiff Collake satisfies the first two elements of the prima facie case, as she did support Watson during the election and lost her job with the MCSD after Bivens took office. With respect to the third element, Collake asserts that on election day, she mistakenly attempted to hand Bivens a "Reelect Sheriff Watson" flyer, which he did not accept. [Doc. 66-10 at 10] Bivens asserts that he hired other, more qualified candidates and that he did not know Collake prior to the litigation. Given the encounter between Collake and Bivens, and Collake's work on Watson's campaign, the Court finds that the resolution of Collake's claim, as with Beckman, requires a credibility determination which must be left to the jury. In light of the evidence before the Court, a reasonable jury could find that Bivens' decision was motivated in part by Collake's political activity. Accordingly, the Court finds that the defendant's motion **[Doc. 65]** will be **DENIED** as to Collake.

### D. Dustin Cook

There is no dispute that plaintiff Cook satisfies the first two elements of the prima facie case, as he did support Watson during the election and lost his job with the MCSD after Bivens took office. With respect to the third element, Cook asserts that Bivens saw Cook campaigning for Watson and wearing a Watson t-shirt. [Doc. 82-5 at 21] Cook further asserts that Bivens twice

7

asked Cook not to pull so hard against him in the election. [Id. at 23] In contrast, Bivens states that he did not hire Cook because of complaints against Cook by citizens and the Mayor, and because Cook had previously failed to follow Bivens' orders when the two worked together at a different police department. [Doc. 66-14 at 53-54] Viewing all facts in the light most favorable to the plaintiff, the Court finds that the resolution of Cook's claim requires a credibility determination that must be left to the jury. Accordingly, the Court finds that the defendant's motion **[Doc. 65]** will be **DENIED** as to Cook.

### E. Michael Dion

There is no dispute that plaintiff Dion satisfies the first two elements of the prima facie case, as he did support Watson during the election and lost his job with the MCSD after Bivens took office. With respect to the third element, Dion argues that he openly participated in Watson's re-election campaign, and that Bivens and his campaign staff saw Dion wearing a "Re-elect Doug Watson" t-shirt and assisting in the campaign. [Doc. 81-1] Dion further claims that his ex-wife is a good friend of Bivens' wife. [Id.] Bivens admits to having gone to church with Dion, and that, while Bivens did not know Dion personally, he did know Dion well enough to recognize him. [Doc. 66-14 at 60] Bivens states that Dion's ex-wife told Bivens that Dion drank on the job. [Id.] Bivens indicated that he had also heard rumors from other officers that Dion drank on the job, though Bivens could not identify the source of those rumors. [Id.]

The Court finds that this case presents a closer question than that of plaintiffs Beckman, Collake, and Cook. "Tennessee has long recognized the doctrine of employment at will, with the mutual right of either party to terminate such a relationship with or without cause." Brown v. City of Niota, 214 F.3d 718, 721 (6th Cir. 2000). Thus, under normal circumstances, even an

8

unsubstantiated belief that an employee was drinking on the job would be sufficient reason for termination of an at-will employee. However, if Dion's protected political activity played some role in the decision not to retain Dion, that would be a violation of Dion's constitutional rights, and would taint an otherwise valid employment decision.

In this instance, with regard to the accusation made by Dion's ex-wife, Bivens admits that not everything that is said during the course of a divorce is true. [Doc. 66-14 at 61] Additionally, although Bivens heard rumors from other officers that Dion drank on the job, there is evidence before the Court that Bivens hired another officer who faced similar accusations of drinking on the job, as well as accusations of domestic violence. [Doc. 66-14 at 83; Doc. 82-8 at 22] In light of Bivens decision to hire an officer who faced rumors of the same behavior that allegedly caused Bivens not to hire Dion, the Court finds that Dion has presented sufficient circumstantial evidence to raise a question of fact as to Bivens' actual motivation. As with many of the other claims in this case, the Court cannot make a credibility determination as to whether to believe Bivens' claims as to his true motivation, but must instead leave that decision to the jury. Accordingly, the Court finds that the defendant's motion **[Doc. 65]** will be **DENIED** as to Dion.

### F. Jacob Keener

There is no dispute that plaintiff Keener satisfies the first two elements of the prima facie case, as he did support Watson during the election and lost his job with the MCSD after Bivens took office. With respect to the third element, Keener states that he was present at the polls on election day, wearing a Doug Watson t-shirt and hat and passing out Doug Watson flyers. [Doc. 66-4 at 17] Keener indicated that he knew Bivens, and he saw Bivens at the polls, though they did not speak. [Id. at 16-17] In contrast, Bivens states that he did not hire Keener because of rumors and

9

complaints about Keener's job performance. [Doc. 66-14 at 63] The Court finds that Keener has presented sufficient circumstantial evidence to raise a question of fact as to Bivens' true motivation. Accordingly, the Court finds that the defendant's motion **[Doc. 65]** will be **DENIED** as to Keener.

### G. Laurie McDaniel

There is no dispute that plaintiff McDaniel satisfies the first two elements of the prima facie case, as she did support Watson during the election and lost her job with the MCSD after Bivens took office. With respect to the third element, McDaniel states that she actively supported Watson during the campaign, that she personally knew Bivens, and that Bivens had previously promised to hire her if he were elected. [Doc. 82-7 at 19-21] In contrast, Bivens states that he felt that he hired individuals with better credentials than McDaniel, and further states that he was aware that McDaniel ran unauthorized background checks while employed with the MCSD. [Doc. 66-14 at 67-69]

McDaniel's claim is distinguishable from the other plaintiffs in this case, in that McDaniel offers no evidence, not even circumstantial evidence, that Bivens was aware of McDaniel's support of Watson. In the absence of at least circumstantial evidence that Bivens was aware of McDaniel's support of Watson, the Court finds that McDaniel has not established the third element of the prima facie case, and thus cannot establish a claim for First Amendment retaliation. The Court finds McDaniel's arguments that she was more qualified than the Chief Jailer hired by Bivens to be unavailing, as the position of Chief Jailer, an administrative and policy making position, is vastly different from the position that McDaniel previously held. Thus, McDaniel and the person hired as Chief Jailer, Trent Prock, are not similarly situated, and the comparison is inapposite. McDaniel

10

offers no evidence as to the qualifications of individuals hired for the position she previously held, and thus her arguments as to being more qualified than the individuals who replaced her must fail.

Based on the evidence of record, the Court finds that McDaniel cannot establish a prima facie case of First Amendment retaliation. Rather, given McDaniel's own admission that she ran unauthorized background checks of multiple individuals, the Court finds that there are no questions of material fact as to McDaniel's termination, and that summary judgment is appropriate. Accordingly, the defendant's motion **[Doc. 65]** will be **GRANTED** as to McDaniel.

### H.  Olwin Norman

There is no dispute that plaintiff Norman satisfies the first two elements of the prima facie case, as she did support Watson during the election and lost her job with the MCSD after Bivens took office. With respect to the third element, Norman states that during the election, she, while wearing a Watson t-shirt, spoke briefly with Bivens at the polls. [Doc. 66-8 at 15-16] Norman states that Bivens walked up to her, shook her hand, and asked for her vote, to which Norman responded "No sir, I'll be voting for Doug Watson." [Id.] In contrast, Bivens states that he did not hire Norman because he had been advised that Norman was rude to the public. [Doc. 66-14 at 69] In light of Norman's encounter with Bivens, the Court finds that Norman has presented sufficient circumstantial evidence to raise a question of fact as to Bivens' true motivation. Accordingly, the Court finds that the defendant's motion **[Doc. 65]** will be **DENIED** as to Norman.

### I.  Tonia Norwood

There is no dispute that plaintiff Norwood satisfies the first two elements of the prima facie case, as she did support Watson during the election and lost her job with the MCSD after Bivens took office. With respect to the third element, Norwood states that she supported Watson during the

11

election and that Bivens was present at the early voting site while she was wearing a Watson t-shirt and handing out Watson campaign materials. [Doc. 66-9 at 21] Norwood further states that she worked the polls on election day, handing out Watson cards, and that she believes Bivens was present. [Id.] Norwood also states that she previously had a disagreement with Bivens when both Norwood and Bivens worked for the Tellico Plains Police Department. [Doc. 82-8 at 4-5] Specifically, Norwood states that she quit the Tellico Plains Police Department after Bivens was promoted to Chief of Police over Norwood. [Id. at 5-6, 9] Norwood indicated that she felt that Bivens had lied to her, because Bivens had previously told her that he would not accept the Chief of Police position because Norwood was the more qualified candidate. [Id. at 9] The defendants offer no specific testimony of their own as to Norwood, instead relying on Norwood's deposition testimony.

At this stage in the proceedings, the Court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986). In this instance, the Court is faced with circumstantial evidence that Bivens was aware of Norwood's support of Watson, but the Court is also faced with evidence of past personal problems between Bivens and Norwood. Given Tennessee's endorsement of at-will employment, Bivens would have been well within his rights to terminate Norwood based on their past history, but there is still a question of fact as to whether Norwood's political activity played some role in Bivens' decision. Only the jury can weigh the evidence and make the credibility determinations necessary to reach such a decision. Thus, while Norwood's case presents a close question, the Court finds that summary judgment is not appropriate

12

in this instance, but instead the decision must be left to a jury. Accordingly, the Court finds that the defendant's motion **[Doc. 65]** will be **DENIED** as to Norwood.

**J.      James Shaw**

There is no dispute that plaintiff Shaw satisfies the first element of the prima facie case, as he did support Watson during the election. As to the second element, Shaw states that he did turn in an application [Doc. 82-10 at 19], but Bivens states that Shaw did not turn in an application. [Doc. 66-14 at 70-71] No application from Shaw has been found. [Id.] Still, Bivens testified that he likely would have retained Shaw if Shaw had applied. [Id.]

As to the third element, Shaw states that he supported Watson during the campaign, but offers no evidence that Bivens was aware of Shaw's political activity. Additionally, Shaw states that he was told prior to the election by Joe Grant, Shaw's former supervisor, that Shaw would not be retained because of a personal grudge between Shaw and Grant. [Doc. 82-10 at 13] Based on Shaw's testimony, Grant, who assisted Bivens with his campaign, was a former friend of Shaw's, but felt Shaw betrayed Grant when Shaw returned to work under former Sheriff Watson after Grant was demoted. [Id.] Thus, the only compelling evidence presented by Shaw as to the reason for his termination indicates that he was terminated because of hard feelings between Shaw and Grant, not out of retaliation for Shaw's protected political activity. In the absence of some evidence that Bivens' decision not to retain Shaw was premised on Shaw's protected political activity, Shaw cannot establish a prima facie case of First Amendment retaliation. Accordingly, the Court finds that the defendant's motion **[Doc. 65]** will be **GRANTED** as to Shaw.

### K. Christopher Williams

There is no dispute that plaintiff Christopher Williams satisfies the first two elements of the prima facie case, as he did support Watson during the election and lost his job with the MCSD after Bivens took office. With respect to the third element, Christopher Williams states that he was very active in Watson's campaign, and that Bivens and his staff saw Williams openly supporting Watson on numerous occasions. [Doc. 85-1] Williams says that Bivens saw him handing out Watson flyers on election day. [Id.] In contrast, Bivens states that he did not retain Williams because of excessive force complaints, though Bivens agreed that allegations of excessive force are not always accurate. [Doc. 66-14 at 71-72] The Court finds that Christopher Williams has offered sufficient circumstantial evidence to raise a question of fact as to Bivens' true motivation, and therefore summary judgment is not appropriate. Accordingly, the Court finds that the defendant's motion **[Doc. 65]** will be **DENIED** as to Christopher Williams.

### IV. Qualified Immunity

Having analyzed the specific claims of each of the plaintiffs, the Court must next determine whether qualified immunity serves to shield Bivens from liability. "Qualified immunity shields government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable official would have known." Thacker v. Columbus, 328 F.3d 244, 259 (6th Cir. 2003). The Sixth Circuit has held that qualified immunity involves a two-step inquiry:

> First the court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation occurred. If the court finds a constitutional violation, it must then consider whether the violation involved "clearly established constitutional rights of which a reasonable person would have known."

14

Id. (citation omitted). "A right will be considered clearly established when the 'contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Id. (citation omitted). Additionally, "[i]mmunity applies if reasonable officials could disagree as to whether the conduct violated the plaintiff's rights." Id. at 260 (citation omitted). The Sixth Circuit has also held that "[w]here . . . the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability, and thus summary judgment should not be granted." Griffith v. Coburn, 473 F.3d 650, 656 (6th Cir. 2007) (citation omitted).

In this case, the Court found above that there are questions of fact as to eight of the thirteen plaintiffs, and that there is sufficient circumstantial evidence of a constitutional violation for those eight claims to proceed to a jury. Having found evidence of a constitutional violation, the Court must proceed to the second prong of the qualified immunity, whether the right in question is clearly established. In this instance, the Court finds that the First Amendment speech and affiliation rights implicated in this case are clearly established, and that no reasonable official would think it lawful to terminate a government employee because that employee supported the official's opponent during an election. Thus, qualified immunity does not serve to shield Bivens from the alleged constitutional violations in this case. As an additional basis for the decision to reject Bivens' claim of qualified immunity, the Court notes that the resolution of this case will depend, in large part, on which parties' version of events the jury believes, and which witnesses the jury finds to be more credible. Thus, under Griffith, summary judgment is not appropriate.

## V. Municipal Liability

In order to state a claim against a governmental entity under § 1983, the plaintiffs must show that a policy or custom attributable to the governmental entity resulted in a violation of the plaintiffs' constitutional rights. Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). "A municipality may be liable under § 1983 for actions of its authorized policymakers 'where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" Adair v. Charter County of Wayne, 452 F.3d 482, 493 (6th Cir. 2006). Furthermore, "the policymaker for whose conduct the plaintiff seeks to hold the municipality liable must possess final authority to create official policy with respect to the action ordered." *Id.*

The plaintiffs' complaint does not identify any policy or custom of Monroe County which could arguably be linked to the alleged violation of the plaintiffs' constitutional rights. Further, because there is no *respondeat superior* liability under § 1983, *Searcy v. Dayton*, 38 F.3d 282, 286 (6th Cir. 1994), Monroe county cannot be held liable for an injury inflicted solely by its employees or agents. Shehee, 199 F.3d at 300. The plaintiffs argue that county officials, including the county mayor, Allan Watson, contributed to the decision making process in this case. The plaintiffs further argue that Bivens, as the Sheriff, was the highest ranking law enforcement official, and thus was the policy maker with respect to law enforcement decisions. While it is true that Bivens and Watson would be considered policy makers in this case, the plaintiffs point to no county policies or customs which authorized the alleged unlawful terminations in this case. As the Court noted above, *respondeat superior* does not apply to § 1983 actions, thus the fact that policy makers allegedly violated the plaintiffs' rights does not automatically equate to a finding of liability for Monroe

16

County. Rather, the plaintiffs must set forth some proof of county customs or policies which condoned Bivens' actions. The plaintiffs have presented no such proof.

Without some evidence of a pattern of similar discrimination in the past, or some specific policy or custom authorizing the termination of employees who supported Watson, the plaintiffs cannot prevail in their claim against Monroe County. Therefore, the claims against Monroe County must be dismissed. Similarly, because a suit against Bivens in his official capacity is essentially duplicative of the claims against Monroe County, the official capacity claims against Bivens must also be dismissed. Shamaeizadeh v. Cunigan, 338 F.3d 535, 556 (6th Cir. 2003) ("A section 1983 action against a city official in his or her official capacity is treated as an action against the city entity itself."). Accordingly, the defendants' motion **[Doc. 65]** will be **GRANTED** as to all claims against Monroe County and as to all claims against defendant Bivens in his official capacity, but not as to Bivens in his individual capacity.

**VI. Conclusion**

For the reasons set forth more fully above, the defendants' motion **[Doc. 65]** is **GRANTED in part**, to the extent that the claims of Jeb Brown, Chuck Hunt, George Williams, Laurie McDaniel, and James Shaw are **DISMISSED with prejudice**, as are all claims against defendant Monroe County and as to Bivens in his official capacity; and **DENIED in part** as to plaintiffs Justin Beckman, Barbara Collake, Dustin Cook, Michael Dion, Jacob Keener, Olwin Norman, Tonia Norwood, and Christopher Williams. The remaining claims against defendant Bivens in his individual capacity will proceed to trial on August 3, 2009.

**ORDER ACCORDINGLY:**

ENTER:

s/ H. Bruce Guyton
United States Magistrate Judge

18